<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                    :

NILA ORQUERA,                  :
                                      :
                  Plaintiff,     :
                                      :          Civ. Action No. 06-2121 (JAG)
            v.               :
                                      :              **OPINION**
MICHAEL J. ASTRUE       :
Commissioner of Social Security,   :
                                      :
                  Defendant.    :
_____:

<u>GREENAWAY, JR., U.S.D.J.</u>

## I. <u>INTRODUCTION</u>

Plaintiff Nila Orquera seeks review of the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).[1] For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

## II. <u>PROCEDURAL HISTORY</u>

On December 12, 2003, Plaintiff filed an application for SSI and DIB, alleging that she

_____

[1] These sections of the Social Security Act ("Act") provide that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing in which he or she was a party.  Under 42 U.S.C. § 405(g), the federal district court for the district in which the plaintiff resides is the appropriate place to bring such an action.

was disabled as of October 9, 1993.  (Tr. 79-81.)[2]  Plaintiff bases her claim on pain caused by a fractured hip, back and neck pain, depression, and hypertension, all allegedly originating from a 1989 accident.  (Tr. 100, 150, 199-201.)  Plaintiff's application initially was denied on February 17, 2004 (Tr. 35-40), and again on reconsideration on July 29, 2004.  (Tr. 42-45.)  Plaintiff subsequently requested a de novo hearing before an Administrative Law Judge ("ALJ").  (Tr. 46.)  On April 19, 2005, Plaintiff appeared before Administrative Law Judge Michael Lissek.  On September 6, 2005, ALJ Lissek issued a decision, which only partially favored Plaintiff's claims.  (Tr. 12-29.)  On March 10, 2006, Plaintiff sought an Appeals Council review, and the Appeals Council concluded that there were no grounds for review.  (Tr. 5-7.)  Plaintiff then filed the instant action, seeking reversal of the Commissioner's decision, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).

### III. STATEMENT OF FACTS

**A.     Background**

Plaintiff was born in Ecuador on April 4, 1947.  (Tr. 222.)  She  has completed school up to 11th grade, and is unable to read, write, or speak English.  (Tr. 18, 24, 32.)  Prior to 1997, Plaintiff worked as a sewing machine operator and as an asbestos remover.  (Tr. 24.)  In 1997, Plaintiff worked as sewing machine operator, which involved sitting all day and operating foot pedals. (Tr. 19.)  Plaintiff stopped working on December 31, 1997 because she could not sit for long periods of time, and because her employer would not allow her to take breaks to stand and stretch.  (Tr. 19.)

---

[2]Tr. refers to the transcript of Nila M. Orquera's hearing of the claim for period of disability, disability insurance benefits, and supplemental income benefits dated April 19, 2005.

### B.    Claimed Disabilities

Plaintiff contends that she developed depression because of a 1989 accident, and has testified that her depression has significantly progressed over the years, causing her to seek psychiatric assistance and necessitating the use of prescription medications.  (Tr. 19, 20.)  She described herself as a person who never feels well.  (Tr. 20.)  Plaintiff stated that she has lower back pain, pain around the waist, and pelvic pain when going up or down stairs due to a fracture.  (Tr. 20.)  Plaintiff further alleges that she has been disabled since October 9, 1993 due to a fractured hip, neck, back and hip pain, depression, and hypertension.  (Tr. 18.)

### C.    Treating Physicians

The record indicates that several physicians have evaluated Plaintiff.

#### 1.    *Dr. Hanfling*

Dr. Hanfling, a cardiologist, examined the Plaintiff on August 13, 2002.  (Tr. 21.)  He noted that Plaintiff had an abnormal EKG in July 2002.  (Id.)  Plaintiff reported mild shortness of breath with exertion, and Dr. Hanfling found that her heart was irregular in rhythm and had a systolic murmur. (Id.)  An August 17, 2002 echocardiograph revealed normal right and left ventricular function, mild aortic sclerosis without stenosis, mild aortic insufficiency, and no significant mitral regurgitation.  (Tr. 21.)

After a September 11, 2002 visit, Dr. Hanfling noted that Plaintiff's baseline EKG was within normal limits, and that she was then taking Atenolol.  (Tr. 22.)  At an October 8, 2002 visit, Plaintiff denied dizziness, chest pain, and shortness of breath.  (Id.)  Dr. Hanfling's progress notes from January 9, 2003 indicate that he saw Plaintiff for chronic left hip and back pain.  (Id.)  Plaintiff told Dr. Hanfling that she fell in 1989 and suffered a pelvic fracture.  (Id.)  On

3

examination, Dr. Hanfling found that Plaintiff showed tenderness, with range of motion in the left hip, and that she had limited flexion and extension of the lower back, as well as lower back tenderness.  (Id.)  Dr. Hanfling diagnosed Plaintiff with probable post-traumatic arthritis of the left hip, and possibly of the lower back as well.  (Id.)  He prescribed Bextra for Plaintiff.  (Id.)

Dr. Hanfling's progress notes from February 27, 2003 show that Plaintiff had bilateral lower back pain in the sciatic notch region, but x-rays of her spine, pelvis, and hips were normal. Plaintiff  received bilateral sciatic notch injections, was placed on Ultram, and was prescribed physical therapy.  (Id.)

### 2.     *Dr. Sambandan*

Dr. Sambandan, an internist and Plaintiff's primary physician, in a report based on his treatment of Plaintiff from December 13, 2001 through January 8, 2004, stated that he saw Plaintiff every few months, and diagnosed her with a cervical sprain, a left shoulder injury, and hypertension.  (Tr. 22.)  Dr. Sambandan also noted that Plaintiff was very depressed (Id,) and was prescribed Zoloft, Temazepam, Elavil, Ambien, and Atenolol  (Tr. 20.)

### 3.     *Dr. Allegra*

Dr. Allegra, an orthopedic specialist, indicated, on January 7, 2004, that Plaintiff reported severe lower back and sciatic notch tenderness and that he injected Plaintiff with Lidocaine and Kenalog.  (Tr. 209.)  Plaintiff returned to Dr. Allegra on May 4, 2004, and reported that she had not improved, and that she was receiving chiropractic care for her allegedly chronic lower back and left hip pain.  (Tr. 23.)  Dr. Allegra noted that Plaintiff had limited motion of the lumbar spine, left paravertebral spasm, positive left straight leg raising, and limited motion of the hips, with her left worse than her right.  (Id.)  Dr. Allegra's impression was that Plaintiff suffered from

chronic lower back and hip pain with spasm.  (Id.)  In his opinion, Plaintiff remains disabled.

(Id.)  He prescribed Vioxx.  (Id.)

### 4.  Dr. Zhang

Dr. Zhang, an internal medicine physician, performed a consultative examination[3] of

Plaintiff on May 13, 2004.  (Id.)  Plaintiff reported to Dr. Zhang that she fractured her pelvis in

1989, and complained of pain in her back and hip area, her left side worse than her right.  (Id.)

Plaintiff also stated that she suffers from hypertension and depression. (Id.)  Plaintiff reported to

Dr. Zhang that she was treated at St. Vincent's Hospital in 1989 for a fractured pelvis; that she

underwent a hysterectomy in 1995 in Europe; that she was at St. Joseph's Hospital for depression

in 1996; that she was treated at JFK Hospital for incontinence in 2002; and that she underwent a

sinusitis operation in 2003.  (Id.)  At the time of Dr. Zhang's examination, Plaintiff was taking

Zoloft, Atenolol, Carbamazepine, and Vioxx.  Dr. Zhang diagnosed Plaintiff as "status-post

pelvic fracture, hypertension and depression."  (Id.)

### 5.  Dr. Lamanna

Dr. Lamanna, a psychiatrist,  performed a consultative examination of Plaintiff on May

13, 2004.  (Id.)   Plaintiff reported to Dr. Lamanna that she received outpatient psychiatric

treatment for depression in 1996 at St. John's Queens Hospital in New York and that she was

also treated in Union City for depression between 1995 and 1996.  (Id.)  Plaintiff stated that she

was then receiving Zoloft and Temazepam from Dr. Sambandan, her primary care physician.

(Id.)  Plaintiff reported multiple depressive and anxiety symptoms, including diminished sense of

pleasure, concentration problems, fatigue, social isolation, occasional suicidal thoughts,

---

[3] A certain type of examination where no doctor-patient relationship exists or is implied.

excessive worry, and nightmares.  (Tr. 23.)  On examination, Plaintiff's affect was depressed, and her mood was dysthymic.  (Id.)  Attention and concentration were intact as evidenced by the ability to perform serial 3's and simple calculations.  (Id.)  Memory appeared mildly impaired due to emotional distress secondary to depression.  (Id.)  The claimant stated that she is able to perform self-care, cook, do light cleaning and light laundry, and shop for groceries.  (Id.)  The claimant was diagnosed with major depressive disorder, and moderate and generalized anxiety disorders.  (Id.)

Dr. Lamanna stated that Plaintiff was able to follow and understand simple directions and instructions, and was able to perform simple tasks independently. (Id.)  She also appeared to be able to perform complex tasks independently and to relate adequately to others.  (Id.)  Dr. Lamanna further stated that Plaintiff was able to maintain attention and concentration, but may have difficulty maintaining a regular schedule, and appears to have poor stress tolerance.  (Tr. 24.)

D.     **Expert Witnesses**

The following physicians testified as medical experts at the hearing before the ALJ.

1.     *Dr. Zemel*

Dr. Zemel, an expert witness, testified that Plaintiff has a history of a fractured pelvis, a history of low back pain with a possible herniated disc, a history of sciatic pain with injections to that area, a history of medicated hypertension, depression, and anxiety disorder.  (Tr. 20, 241-242.)  Dr. Zemel stated that in his opinion, Plaintiff does not meet or equal any of the listings, whether her orthopedic impairments are considered alone, or in combination with the rest of her impairments.  (Id.)  Dr. Zemel indicated that Plaintiff was limited to less than sedentary work as

of January 9, 2003.  (Tr. 243.)  When asked whether Plaintiff suffered impairments with a history

that goes back further than 2003, he responded that he felt uncomfortable projecting into the past

without hard medical evidence.  (Tr. 20-21, 249.)

2.    *Dr. Cameron*

Dr. Cameron, an expert witness specializing in clinical psychology, testified that Plaintiff

started experiencing depressive symptoms after her separation from her husband.  (Tr. 21.)  She

testified that the first medical documentation noting significant depression was in December 13,

2001, and supports Plaintiff's testimony that her separation from her husband triggered her

depression .  (Tr. 21, 251.)  Dr. Cameron stated that it appears that Plaintiff's depression has

gotten progressively worse, based on a May 13, 2004 consultative examination report conducted

by Dr. Zhang and Dr. Lamanna and an increase in her medications.  (Id., Tr. 159-167.)  Dr.

Cameron stated that Plaintiff met Listing 12.04 as of the May 13, 2004 consultative examination.

(Id.)  She stated that prior to that, Plaintiff  had a history of significant depression but that it is

not known for sure whether it met or equaled a listing.  (Id.)  Dr. Cameron stated that in her

opinion, Plaintiff had a severe psychiatric impairment back in 1995, which would have restricted

her in terms of her ability to function in a work setting.  (Id.)  She stated that the treatment she

had in 1995/96 indicates that she was not adjusting well to the separation from her husband and

that a steady progression of her depression is shown through the medical records.  (Id.)

Dr. Cameron noted that Plaintiff's claim that she suffered from depression going back to

1995 is "sketchy;" he found that Plaintiff's testimony and the documents in evidence

demonstrating her depression in 2001, without more, do not provide concrete support for her

claims of earlier depression.  (Tr. 258.)

7

E.       **State Agency Doctor's Review**

In a February 13, 2004 report, Dr. Britton, a non-examining state agency medical

consultant, found that there was insufficient medical evidence of mental or emotional impairment

prior to December 31, 1997.  (Tr. 190.)  Dr. Britton concluded that there is no medical evidence

prior to this date, on which Plaintiff was last insured, and at present the only medical evidence is

that Dr. Sambandan prescribed several medications and stated Plaintiff is depressed.  (Id.)

## IV. DISCUSSION

A.       **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the

evidence and then determine whether there is substantial evidence to support the Commissioner's

decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing

court is not "empowered to weigh the evidence or substitute its conclusions for those of the

factfinder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.

Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F. 2d 1002, 1007 (3d Cir.

8

1984)).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence that may also support a different conclusion. Blalock, 483 F.2d at 775.

### B.    <u>Statutory Standards</u>

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423 (d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Finally,

9

while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

### C.      The Five-Step Evaluation Process And the Burden of Proof

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[4] 20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled," and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F. R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the

---

[4] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., the Third Circuit Court of Appeals found that to deny a claim at step three, the ALJ must specify which listings[5] apply and give reasons why those listings are not met or equaled.  220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000).  In Jones v. Barnhart, however, the Third Circuit noted that Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. 364 F.3d 501, 505 (3d Cir. 2004).   Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.   Id.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC ") to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity ("RFC") enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work.

---

[5]Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that the claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet his burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of vocational factors, i.e., age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the number of jobs in the national economy that exist for a given combination of vocational factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When the vocational factors coincide with all the criteria of a rule, the rule directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant, however, may rebut any finding of facts as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d

422, 428 (3d Cir. 1999).  "The combined impact of the impairments will be considered

throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523;

Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  The burden, however, remains on

the Plaintiff to prove that the impairments in combination are severe enough to qualify him for

benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing

responsibility on the claimant to show how a combination-effects analysis would have resulted in

a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2

(E.D. Pa. June 10, 2003) (stating that "burden was on [Plaintiff] to show that the combined effect

of her impairments limited one of the basic work abilities").

    While Burnett involved a decision in which the ALJ's explanation of his step three

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit

Court of Appeals applies its procedural requirements, as well as its interpretation of Jones, to

every step of the decision.  See e.g., Rivera v. Comm'r, No. 05-1351, 2006 U.S. App. LEXIS

2372, at *3 (3d Cir. Jan. 31, 2006).  Thus, at every step, "the ALJ's decision must include

sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to

a particular format."  Id.

    **D.**    **ALJ Findings**

    The ALJ applied the five-step sequential evaluation and determined that Plaintiff failed to

show that she was unable to perform her past relevant work prior to December 31, 1997, the date

she was last insured for disability insurance benefits.[6]  (Tr. 25-27.)

---

    [6]Because the ALJ found that Plaintiff was disabled as of January 9, 2003, and not prior to,
she was awarded SSI benefits from that date forward.  (Tr. 24.)

The ALJ found that Plaintiff satisfied step one of the evaluation process because she has not engaged in any gainful activity since December 30, 1997, her amended onset date.  (Id.)

The ALJ found at step two of the evaluation that evidence established that Plaintiff has the following "severe" impairments: back pain, hip and pelvic pain status-post fracture; hypertension; major depressive disorder; and generalized anxiety disorder.  (Id.)

At step three of his evaluation, the ALJ also found that Plaintiff met impairment Listing 12.04 as of May 13, 2004.  (Tr. 21, 251.)  On the other hand, the ALJ also found, that Plaintiff had no impairment or combination of impairments that met or equaled the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4, during the period from December 30, 1997 through May 12, 2004.  (Id.)  The ALJ noted that Plaintiff's subjective complaints of pain and limitation precluding work activity are credible as of January 9, 2003, but not prior thereto. (Tr. 27.)  Because the record did not contain medical evidence of Plaintiff's impairments in or about December 1997, the ALJ called upon medical examiners Dr. Zemel and Dr. Cameron to provide their opinions as to Plaintiff's condition during that period.  (Tr. 240-49.)  The ALJ rejected Dr. Cameron's opinion on the period prior to May 13, 2004 on the basis that it was not supported by the record, and instead relied on Dr. Zemel's testimony that in his opinion, Plaintiff did not meet or equal any of the listings, whether her orthopedic impairments were considered alone, or in combination with the rest of her impairments.  (Tr. 25, 242-43.)

At step four, the ALJ found that Plaintiff had previously worked as a sewing machine operator, a position at or below the light exertional level of work.[7]   The ALJ concluded that

---

[7]Light work involves lifting no more than 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day.

14

Plaintiff had the RFC to perform her past relevant work as a sewing machine operator, and therefore was "not disabled' during the period from December 30, 1997 through January 8, 2003. (Tr. 28.)  The ALJ based this conclusion on his findings that Plaintiff's mental and emotional impairments, including depression and generalized anxiety disorder with mild restriction of the activities of daily living, did not significantly compromise her RFC.  (Tr. 25.)  The ALJ also relied on Dr. Zemel's and Dr. Cameron's testimony when he concluded that although Plaintiff's impairments are severe, she did not have an impairment during the period from December 30, 1997 through May 12, 2004.  (Tr. 24.)   The ALJ noted, however, that beginning January 9, 2003, Plaintiff was limited to less-than-sedentary-work, (according to Dr. Zemel's testimony), due to the combined effects of a history of a fractured pelvis, a history of low back pain with a possible herniated disc, a history of sciatic pain with injections to that area, and hypertension.  Plaintiff, therefore, could not perform her past relevant work due to her severely diminished RFC.  (Tr. 27-28.)

       In step five evaluation, the ALJ found that Plaintiff's "occupational base is so eroded that there are no jobs that she could perform that exist in significant numbers in the national economy."  (Tr. 28.)  He therefore found that within the framework of the Medical-Vocational Guidelines, Plaintiff is "disabled" within the meaning of the Social Security Act as of January 9, 2003.  (Id.)  The ALJ also concluded, that Plaintiff failed to satisfy her burden of demonstrating her inability to perform work in the national economy prior to 2003.  The ALJ considered both Dr. Zemel's and Dr. Cameron's expert opinions.  He rejected the portions of Dr. Cameron's

opinion admittedly based purely on speculation, as lacking a "legitimate medical basis.[8]"  (Id.)
The ALJ accepted Dr. Zemel's opinion that Plaintiff was disabled beginning January 9, 2003,
and not prior to that date.  Her disability therefore, was found to have begun after December 31,
1997, the last date she was insured.  (Tr. 26.)  Based on the aggregate record, the ALJ reasonably
concluded that Plaintiff retained the ability to perform light work prior to her date last insured.
(Id.)

### E.   Analysis

Plaintiff contends that the ALJ's decision should be reversed, and that Plaintiff should be
awarded DIB and SSI benefits, because the ALJ's decision is not supported by substantial
evidence.  (Pl.'s Mem. of L. at 4.)  Plaintiff contends: (1) the ALJ did not adduce the evidence
supporting her RFC determination between December 30, 1997 and May 12, 2004  (Id. at 9); and
(2) the ALJ did not compare the duties of Plaintiff's past work with her RFC determination, as
required by the Regulations.  (Id. at 18, 19).  Despite Plaintiff's contentions, the ALJ's finding
that Plaintiff's mental and physical impairments did not render her disabled during the relevant
period is supported by substantial evidence in the record.

> 1.   *Substantial Evidence Supports the ALJ's Finding that Between December 30, 1997 and May 12, 2004 Plaintiff Maintained the RFC to Perform the Exertional Demands of Light Work*

Plaintiff claims that the ALJ did not articulate the evidence supporting her RFC
determination between December 30, 1997 and May 12, 2004.  (Pl. Mem. of L. at 9.)  Plaintiff
contends that the ALJ failed to explain her findings and conclusions sufficiently in a

---

[8] While SSR 83-20 requires the use of medical experts to infer a reasonable onset date in
this type of case, it also provides that the opinion of the expert must have a "legitimate medical
basis."

16

"comprehensive and analytical" manner.  Id.  Plaintiff further insists that the ALJ must explain which evidence contradicts his findings, and which evidence supports his findings, and why he found that one set of medical data is more persuasive than the other.  (Pl. Mem. of L. at 11.)

The ALJ is required to set forth the reasons for his decision.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112 (3d Cir. 2000).  See also Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981).  The ALJ must provide "not only an expression of the evidence he considers some indication of the evidence he rejects, and not merely an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected and which supports the result."  Cotter, 642 F.2d at 705.  Burnett established that in the absence of an indication of which evidence the ALJ accepts and which he rejects, the reviewing court cannot tell if significant probative evidence was simply ignored.  220 F.3d at 121.  On the other hand, in Jones v. Barnhart, the court noted that Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. 364 F.3d at 505.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.  Id.

In the instant case, the ALJ comprehensively reviewed Plaintiff's medical history before concluding that the Plaintiff's mental and emotional impairments did not significantly compromise her RFC during the period from December 30, 1997 to May 12, 2004.  Based on the aggregate record, the ALJ recognized that during the period at issue, the claimant had depression and generalized anxiety disorder with minor restriction of the activities of daily living;  moderate difficulty in maintaining social functioning;  mild difficulty in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. 25, 27.)  This conclusion

was based on Plaintiff's medical evidence and the opinions of the state medical experts. (Id.)

The ALJ sufficiently explained why he considered one set of medical data and why he rejected the other. (Id.)  He considered Dr. Cameron's opinion, but rejected that portion of Dr. Cameron's opinion based purely on speculation.  (Id.)  The ALJ also explained that he considered and accorded weight to Dr. Zemel's opinion that whether the Plaintiff's orthopedic impairments were considered alone or in combination with the rest of her impairments, she was limited to less than sedentary work as of January 9, 2003, but due to a lack of medical evidence, he could not provide an opinion regarding Plaintiff's condition prior to that date.  (Tr. 245.)

Based upon Dr. Cameron's and Dr. Zemel's expert testimony, in conjunction with the absence of any treatment for an orthopedic problem prior to January 9, 2003, the ALJ reasonably concluded, based on substantial evidence in the record, that Plaintiff maintained the RFC to perform light work from December 30, 1997 through January 8, 2003.  Although the Social Security regulations do not "require objective medical evidence to corroborate statements about the intensity, persistence, and functional effects of pain or symptoms, they also do not require a finding of "disabled" every time a claimant states that [she] feels unable to work."  Pope v. Shalala, 998 F.2d 473, 482 (7th Cir. 1993).

The objective medical records support the ALJ's finding.  The medical records reflect that Plaintiff had not received any emergency room or hospital treatment for her claimed physical disabilities or depression for the period from 1997 through 2003.  The evidence merely indicates that Plaintiff had been prescribed and was taking several medications, but there is no evidence that they did not provide her any relief.  Plaintiff's failure to seek regular medical treatment, other than medication, for the period from 1997 through 2003 undermines her complaints of

debilitating pain and symptoms.  Id. at 485.

        2.     *Substantial Evidence Supports the ALJ's Findings that Plaintiff Retained the Ability to Perform her Past Relevant Work*

Plaintiff argues that the ALJ erred in considering her ability to perform her past work. (Pl.'s  Mem. of L. at 19-23.)  Specifically, Plaintiff claims that without the use of a vocational expert, the ALJ cannot conclude that her mental restrictions did not affect her ability to perform her past work.  Plaintiff further contends that in order to find a Social Security applicant capable of performing past relevant work, an administrative decision must first discuss and compare the relationship between the established medical and mental impairments suffered by the applicant with the specific requirements of the former job. (Pl.'s Memo of L. at 19.)

        a.     *Absence of vocational expert does not render an ALJ's findings regarding Plaintiff's RFC deficient*

At the fourth and fifth steps of the evaluation process, outlined in 20 C.F.R. § 404.1520, the ALJ often seeks advisory testimony from a vocational expert.  Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).  Testimony of vocational experts "typically centers on hypothetical questions posed by the ALJ . . . the ALJ will normally ask the expert whether, given certain assumptions about Plaintiff's capabilities, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy."  Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The applicable regulations, however, merely allow the use of a vocational expert, and do not mandate the ALJ to use a vocational expert when he determines whether work exists in the national economy for a particular plaintiff; an ALJ may properly choose not to use a vocational expert in his assessment.  20 C.F.R. § 404.1566(e).

In the Third Circuit if an ALJ chooses to use a vocational expert in his assessment, "a

hypothetical question must reflect all of Plaintiff's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing Podedworny, 745 F.2d at 218). If the ALJ chooses to use a vocational expert, only then is he mandated to follow this certain procedure to ensure that the vocational expert's opinion rises to the level of substantial evidence.

In this case, the ALJ did not choose to use a vocational expert in his assessment, and instead chose to consider carefully whether Plaintiff retained the RFC to perform her past relevant work, based on the balance of evidence before him. Because the applicable regulations make the use of a vocational expert optional instead of mandatory, the absence of a vocational expert does not defeat the ALJ's findings regarding Plaintiff's RFC. 20 C.F.R. § 404.1566(e).

> b. *The ALJ properly compared the RFC to Plaintiff's past work in determining whether Plaintiff had the level of capability needed to perform her past relevant work*

The ALJ found that Plaintiff maintained the RFC to perform her past relevant work. Social Security Ruling 82-62 clarifies the process the ALJ must undergo in his determination of Plaintiff's ability to do past relevant work. SSR 82-62 provides that--

> "Determination of the claimant's ability to do past relevant work requires careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reasons for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplemental corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy."

SSR 82-62.

In Burnett, the Third Circuit found that the ALJ must consider and explain his reasons for discounting pertinent evidence before him in making his RFC determination.   Burnett, 220 F.3d at 121.  The ALJ may use his discretion in weighing the credibility of evidence, but in doing so must give some indication of the evidence he rejects and his reasons for discounting such evidence.  See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705.  SSR 83-20 provides that--

> "in some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing the ALJ should call on the services of a medical advisor when onset must be inferred."

SSR 83-20.  See also Walton v. Halter, 243 F.3d 703 (3d Cir. 2001); Newell v. Commissioner of Soc. Sec., 347 F.3d 541 (3d Cir. 2003).

In this case, the ALJ concluded that Plaintiff maintained her RFC during the period from December 30, 1997 to January 8, 2003, to perform the exertional demands of light work, i.e., to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day.  (Tr. 25.)  In doing so, the ALJ considered Plaintiff's testimony along with the testimony of two medical experts - Dr. Zemel and Dr. Cameron- in addition to the Plaintiff's medical evidence, before making his RFC determination.  (Id.)

The ALJ examined Plaintiff's individual statements regarding the allegedly mild restrictions on her activities of daily living and in maintaining concentration, persistence and pace, and moderate difficulty in maintaining social functioning, but concluded that the limitations would not have prevented her from performing her past relevant work.  (Pl.'s Mem.

of L. at 22.)  The ALJ concluded that Plaintiff's mental and emotional impairments did not

significantly compromise her RFC during the period from December 30, 1997 to January 8,

2003.  (Tr. 25.)  In reaching his conclusions, the ALJ stated that the Plaintiff's past job did not

require interaction with the public such that her social limitations would interfere with her ability

to do her past work.  The  ALJ also used supplemental corroborative information from the State

agency physician in determining that Plaintiff retained her RFC during the time period at issue.

(Tr. 168.)  The ALJ relied on the actual findings made by the state agency physician that Plaintiff

was moderately limited in her ability to maintain attention and concentration for extended

periods of time, but nevertheless maintained her ability to carry out short and simple, as well as

detailed instructions, perform activities within a schedule, maintain regular attendance and be

punctual, sustain an ordinary routine without special supervision, work in coordination with

others, and make simple work-related decisions.  (Id.)

Dr. Zemel, the orthopedic medical expert, opined that Plaintiff's impairments imposed

functional limitations or restrictions on her ability to function in a work setting as of January 9,

2003, but he felt uncomfortable giving an opinion about projecting medical probabilities going

further back than that date due to the lack of any medical evidence.  (Tr. 242-43.)

Dr. Cameron, the psychological medical expert, opined that as of May 13, 2004, the

claimant met the criteria of Listings 12.04, but that he would have to speculate about whether his

RFC analysis regarding Plaintiff's psychiatric disease and Plaintiff's ability to concentrate went

back as far as 1995.  (Tr. 254.)  Dr. Cameron further opined that Plaintiff's testimony regarding

the information about her depression going back to 1995 is sketchy, again due to lack of medical

documentation.  (Tr. 258.)

The ALJ did consider the testimony of both of these experts in reaching his ultimate conclusion. The ALJ expressly rejected Dr. Cameron's backward-looking opinion regarding Plaintiff's alleged condition prior to 2004 as sketchy, admittedly based on speculation, and lacking a legitimate medical basis or support in the record. (Tr. 25.) The ALJ properly exercised his discretion in weighing the credibility of Dr. Cameron's speculative testimony, and in doing so, satisfied his obligation to identify specifically the evidence he rejected and his reasons for discounting such evidence.

Although the ALJ must give serious consideration to Plaintiff's subjective complaints of [claimed disabilities], even where those complaints are not supported by objective evidence, a Plaintiff's allegations of disabling pain may be discredited by evidence that Plaintiff has received minimum or [no] medical treatment. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (quoting Webb v. Apfel, No. 99-291, 2000 U.S. Dist. LEXIS, at 31 (D. Neb. Sep. 28, 2000)). The record is devoid of any medical evidence that would justify a finding that Plaintiff's mental and emotional impairments at or before the date she was last insured adversely affected her ability to perform her past relevant work.

Finally, Plaintiff makes the argument that the ALJ erred because he did not make a specific finding as to whether Plaintiff could use foot pedals and how long she could tolerate constant movement of her hands and arms, as was required by her past work. (Pl.'s Memo of L. at 23.) The ALJ found that Plaintiff could perform the full range of light work, which encompasses jobs requiring a good deal of sitting with pushing/pulling or arm and/or leg controls. (Tr. 25.) The absence of evidence in the record that Plaintiff had any impairment that would have interfered with her ability to sit for long periods of time or frequently use her hands

and arms, undermines Plaintiff's claim that the ALJ's analysis as to her ability to perform her past work for the period from December 30, 1997 through January 8, 2003 was deficient.

The ALJ properly concluded that Plaintiff had no mental limitations prior to January 8, 2003, the last date Plaintiff was insured, that significantly limited her ability to perform light work.   The ALJ's conclusion that Plaintiff retained the ability to perform her past relevant work was made in accordance with applicable law, and is supported by substantial evidence in the record.

## V. CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: June 19,  2007                                   __s/Joseph A. Greenaway, Jr._____
                                                         JOSEPH A GREENAWAY, JR., U.S.D.J.